IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| VINCENT STRAIN, #1887429 | § | |
| VS. | § | CIVIL ACTION NO. 6:14cv273 |
| MTC EAST TEXAS TREATMENT FACILITY, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Vincent Strain, a prisoner confined at the MTC East Texas Treatment Facility (ETTF) of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed in the Northern District of Texas on February 18, 2014. The Plaintiff's claims regarding matters that occurred at the ETTF were transferred to this Court. On May 19, 2014, the Plaintiff filed an amended complaint (docket entry #17) regarding his claims that occurred at the ETTC. On July 21, 2014, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff was given the opportunity to fully discuss the factual basis of his claims. Several prison officials were in attendance during the hearing, including Assistant Warden Larry Berger, Regional Grievance Officer Karen Norman and Nurse Kelly Maxwell. All witnesses testified under oath.

The Plaintiff testified that he arrived at the ETTF on November 6, 2013. Upon his arrival, he had a preexisting inguinal hernia. On the following day, he was examined by Dr. Richard Tracey, who advised him that his condition was not serious. Nothing was done at that time. The Plaintiff is thus suing Dr. Tracey. The Plaintiff testified that he persisted in pursuing the matter. Among other things, he filed several grievances in order to receive medical care. He saw Dr. Tracey a second time two or three weeks later. Dr. Tracey prescribed him Ibuprofen. The Plaintiff was told that Ibuprofen was the only medication available, but a few weeks later Dr. Tracey prescribed him Hydrocodone. The Plaintiff finally received corrective surgery in Longview on February 27, 2014. He testified that he did not know why it took so long to have the surgery performed. He agreed that the problem was corrected. More specifically, he testified that it helped tremendously. On the other hand, he complained that he was immediately returned to the ETTF. He believes that he should have stayed at the hospital to recuperate. He added that he still has a knot in his scrotum. The doctor told him that it would go away in a few months, but it had not gone away by the time of the hearing. The Plaintiff testified that he still experiences stiffness and pain on his right side of his back and down his right leg. He believes that his lingering problems would not have occurred but for the fact that he was returned so quickly from the hospital to ETTF.

The Plaintiff testified that he sued Dr. Jim Zellar, the MTC Director of Medical Services, because he did not do anything to help him. He wrote requests to Dr. Zellar and never received a response. He finally ran into Dr. Zellar in the hallway. Dr. Zellar told him that he knew all about his problem and that they were working on it. The Plaintiff testified that he received the impression that Dr. Zellar was just blowing him off.

The Plaintiff testified that he sued Warden Michael Bell because he filed four grievances and received only two responses from him. Finally, he sued the ETTF because nurses brought him the

wrong medication on two occasions. On the first occasion, a nurse sent for him and told him that he had been erroneously given a medication other than Hydrocodone. The nurse then gave him the correct medication. On the second occasion, the drug that was given to him caused swelling and made it difficult for him to breathe. The Plaintiff testified that he had a bad reaction only to the second incident.

Nurse Kelly Maxwell testified under oath from the Plaintiff's medical records. He testified that Dr. Tracey initially examined the Plaintiff on November 7, 2013. He saw the Plaintiff a second time on November 18, 2013 and referred him to surgery. Nurse Maxwell testified that Dr. Tracey issued several referrals for surgery. Surgery was performed on February 27, 2014. Nurse Maxwell noted that this type of surgery is classified as elective and that it takes awhile to have it performed. It was not an emergency. He testified that the medical records reveal that the Plaintiff was prescribed Tylenol #3. In April 2014 it was discovered that he had been hoarding Tylenol #3 in his cell. With respect to the Plaintiff's lingering back and leg problems, Dr. Tracey concluded that the problems were not related to the surgery. Another entry reveals that a medical provider specified that the knot in the Plaintiff's scrotum was normal and that it would go down over time.

The Plaintiff gave the Court permission to review his prison records, including his medical records. The records are somewhat extensive. On November 7, 2013, Dr. Tracey filled out a document entitled "Off-Site Consult Request." He specified that the Plaintiff had an obvious scrotal enlargement, which was characterized as "not retractable." He noted that the Plaintiff reported to him that he was experiencing scrotal pain. The Plaintiff also reported that he had been scheduled for surgery but was transferred to the ETTF before it could be done. Dr. Tracey included a notation to consider surgical repair with a surgeon who performs inguinal hernia surgery. Dr. Tracey filled out additional off-site consult requests on November 18, 2013; December 9, 2013; and December 26,

3

2013. The Plaintiff was examined by Dr. Robert Shirley, a surgeon, on January 21, 2014. The decision was made to surgically repair the hernia. Dr. Shirley performed surgery on February 27, 2014. He described the procedure as "left inguinal hernia repair with mesh." He specified that the surgery went well. On February 4, 2014, Dr. Tracey filled out another off-site consult request for a follow-up examination with Dr. Shirley. Dr. Shirley conducted a follow-up examination on March 21, 2014. He noted that the Plaintiff was doing well and that the incisions were well healed. He conducted another follow-up examination on April 18, 2014. He noted that the Plaintiff had approximately three feet of his intestine in his scrotum at the time of surgery. He characterized the Plaintiff's progress as "healing well." He observed that the Plaintiff was still experiencing some swelling of the left groin. The knot mentioned by the Plaintiff was diagnosed as being a "right seroma/hydrocele." Dr. Shirley specified that he "again explained that [the Plaintiff] will continue to have swelling from the tissue void that was created after removing the hernia." He added that the Plaintiff was advised that it would take several months before the situation would get better. Finally, the medical records also reveal that the Plaintiff was prescribed Tylenol #3 from November 19, 2013 until April 2014.

## Discussion and Analysis

In analyzing the Plaintiff's lawsuit, the Court initially notes that federal courts are courts with limited jurisdiction having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress. *Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006). The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to federal violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). The state claims of malpractice and negligence do not provide a basis for a potentially meritorious civil rights lawsuit. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.

1999). In this Circuit, before a plaintiff may maintain a civil rights lawsuit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981).

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court observed that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A mere disagreement with the treatment provided by a doctor does not rise to the level of a constitutional violation. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A court may consider the medical records presented at a *Spears* hearing to determine

5

that the quality or nature of medical treatment did not amount to deliberate indifference. *Varnado*, 920 F.2d at 321.

In the present case, the facts as alleged by the Plaintiff and supplemented by the medical records reveal that medical personnel were responsive to the Plaintiff's serious medical needs. Dr. Tracey documented that the Plaintiff had an obvious scrotal enlargement, which was described as "not retractable." He accordingly filled out several off-site consult requests to have the Plaintiff examined by a surgeon, who actually performed surgery on February 27, 2014. He also prescribed medication, starting with Ibuprofen and later with Hydrocodone. These facts do not give rise to an inference of deliberate indifference. The Plaintiff's primary complaint concerns the delay from the time he arrived at the ETTF until the date on which the surgery was actually performed. There is no indication, however, that the delay was the product of deliberate indifference and that the delay resulted in substantial harm. Most recently, the Fifth Circuit rejected a prisoner's complaint regarding delays finding that it "fell far short of the 'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help' that we have recognized as necessary to constitute deliberate indifference." *Davis v. Lithicum*, ___ F. App'x ___, 2014 WL 2884696, at *2 (5th Cir. June 26, 2014) (quoting *Fielder v. Bosshard*, 590 F.2d 105, 108 (5th Cir. 1979)). The facts as alleged and developed in this case likewise fall far short of a showing of deliberate indifference.

The Plaintiff also complained that he was returned to the ETTF too quickly, and he believes that he has experienced lingering pain on the right side of his back and down his right leg because he was returned to the ETTF too early. Nurse Maxwell testified that Dr. Tracey examined the Plaintiff and concluded that these problems were not related to the surgery. With respect to the decision to release the Plaintiff from the hospital and to return him to the ETTF, a difference of opinion as to the medical care provided is "a classic example of a matter for medical judgment . . . [which] does not

6

represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. at 107. With respect to the lingering pain the Plaintiff has experienced, Dr. Tracey examined him and provided a diagnosis. Once again, he was responsive to the Plaintiff's serious medical needs, as opposed to being deliberately indifferent.

The Plaintiff also complained that nurses employed at the ETTF gave him the wrong medication on two occasions. The Fifth Circuit has rejected such complaints with the finding that there was no showing that the nurse's "actions involved more than negligence." *Daniels v. Beasley*, 241 F. App's 219, 220 (5th Cir. 2007); *Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. 2007) (both cases citing *Varnado*, 920 F.2d at 321)). Once again, negligence claims do not rise to the level of a potentially meritorious civil rights lawsuit.

Overall, the Plaintiff's complaints about the medical care he received are akin to complaints discussed by the Fifth Circuit in *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). The Fifth Circuit provided the following analysis:

> [T]he record shows that he received continuous treatment for his . . . injury despite his incarceration. The treatment may not have been the best that money could buy, and occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall short of establishing deliberate indifference by the prison authorities. Continuing back pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred.

*Id.* at 91. The Fifth Circuit affirmed the dismissal of the inmate's medical claims. Just like the situation in *Mayweather*, the Plaintiff received extensive care for his medical needs and his complaints fall short of establishing deliberate indifference.

Finally, the Plaintiff sued Warden Bell. He explained that Warden Bell answered only two of his four grievances. Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a). On the other hand, a prison system is not required to establish

7

grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b). Inmates do not have a basis for a civil rights lawsuit because they are unhappy with grievance procedures or because their grievances were denied. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Instead, a supervisor, such as Warden Bell, "is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The Plaintiff has not shown that Warden Bell engaged in misconduct or violated his civil rights.

Overall, having reviewed the Plaintiff's various claims, the Court finds that he failed to state a claim upon which relief may be granted and his claims are frivolous in that they lack any basis in law and fact. The lawsuit should thus be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the present complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 28th day of July, 2014.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE